IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN L. WEIRICH, et al., | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  07-cv-871 |
| HORST REALTY COMPANY, LLC | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                               MARCH 24, 2009

Defendant Horst Realty Company, LLC moves for summary judgment with regard to the

remaining ten counts in the Complaint of Plaintiffs Brian L. Weirich and Cherie M. Weirich

alleging, in part, violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131,

*et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951, *et*

*seq*.[1]  After careful consideration of the briefs submitted by the parties, and the exhibits appended

thereto, the Court grants Defendant's Motion as to all but counts one and two in Plaintiffs'

Complaint.

**FACTUAL BACKGROUND**

Brian L. Weirich ("Plaintiff") suffers from Multiple Sclerosis ("MS"), a progressive and

incurable disease that can affect the function of one's organs and debilitate one's neurological

and musculoskeletal systems.  (Pls.' Stmt. of Facts ¶¶ 10, 69-70).  While Plaintiff highlights the

many ways in which his MS condition has affected his life (id. at ¶¶ 71-77), relevant here are the

facts that (1) he gave his previous employer a disability letter in 2003 limiting him to light duty

---

[1] The Court's Memorandum and Opinion dated July 11, 2007 dismissed counts eleven and twelve.  (Doc. No. 8); <u>see</u> <u>also</u> <u>Weirich v. Horst Realty Corp., LLC</u>, No. 07-871, 2007 WL 2071904 (E.D. Pa. July 13, 2007).

without climbing ladders, and (2) he has difficulties with manual tasks, including bathing and brushing his teeth.  (Id. at ¶ 77; Weirich Dep., Ex. 27).

On March 1, 2004, Defendant Horst Realty Company, LLC assumed property management duties of the Briarcrest Gardens apartment complex ("Briarcrest") from Horst Property Management, Inc.  (Def.'s Stmt. of Facts ¶¶ 1-2).  Prior to March 1, 2004, Plaintiff had been employed by Horst Property Management, Inc. as a "Front Desk Clerk/Leasing Consultant." (Id. ¶¶ 2, 12).  Horst Property Management, Inc. transferred Plaintiff to this clerical position at his request in February 2004.  (Id. ¶ 12).  In assuming control of Briarcrest, Defendant hired Plaintiff and over twenty other employees at Briarcrest as at-will employees, all of whom were former employees of Horst Property Management, Inc.  (Id. ¶ 7; Pls.' Stmt. of Facts ¶ 2). Consequently, Plaintiff continued in his position as a front desk clerk/leasing consultant after March 1, 2004.  (Pls.' Stmt. of Facts ¶¶ 2, 7-8, 12).  Kate McKenna, the manager who had approved Plaintiff's move to the front desk position in February, was initially kept on as manager by Defendant.  However, within two weeks of Defendant's assumption of Briarcrest, she was replaced by Larri Ann Craig.  (Id. at ¶¶ 5, 13).

Though McKenna had a positive view of Plaintiff's skills, Craig had a more critical view of Plaintiff's clerical abilities.  (Id. at ¶ 17; Def.'s Stmt. of Facts ¶ 17).  While Plaintiff contests many of Craig's concerns regarding his clerical abilities, it is undisputed that he was approached concerning improperly completed lease termination forms and his failure to complete a filing project.  (Pls.' Stmt. of Facts ¶¶ 22-23).  While working in the front desk clerk/leasing consultant position, Plaintiff applied for the position of "Service Superintendent," a promotion over his clerical job.  (Id. at ¶ 27).  Craig envisioned this position as that of a working supervisor, distinct

from previous versions of the job.  Part of the job responsibilities included climbing ladders. (Weirich Dep. at 74).  Plaintiff admitted to Craig that he could not climb ladders because of his medical condition.  (Pls.' Stmt. of Facts ¶ 28).  Defendant ultimately hired Bernard Dettrey for the position.  (Def.'s Stmt. of Facts ¶ 32).

In mid-April 2004, as a result of dissatisfaction on both sides, Plaintiff met with Craig and Defendant's Director of Human Resources, Brent Keener, to discuss the possibility of alternate employment with Defendant.  (Pls.' Stmt. of Facts ¶ 38).  On April 27, 2004, Keener faxed Plaintiff a copy of the job descriptions for two open positions at Spring Hill Suites, a facility managed by Defendant: (1) Night Auditor and (2) Facility Attendant.  (Def.'s Stmt. of Facts ¶ 39; Weirich Dep., Ex. 15).  This led to a follow-up meeting on April 30, 2004, where Plaintiff expressed his dissatisfaction with the two specific jobs that had been offered.  (Pls.' Stmt. of Facts ¶ 40).  Craig and Keener subsequently set out a schedule for Plaintiff's termination.  (Weirich Dep., Ex. 11).  On May 13, 2004—over two months after Defendant retained Plaintiff—Craig met with Plaintiff to finalize his termination, which was characterized as a temporary layoff.  (Def.'s Stmt. of Facts ¶ 43).  Under Craig's plan, Plaintiff would continue to receive health insurance coverage from Defendant for up to thirteen weeks.  (Id.).  If, after the thirteen-week period, Plaintiff did not secure another position with Defendant, the layoff would become permanent.  (Id.).  During the thirteen-week period, Keener kept Plaintiff apprised of numerous job opportunities within the company, many of which Plaintiff found unsuitable, and some of which turned out to be false leads.  (Pls.' Stmt. of Facts ¶¶ 42-43, 45-47).  As a result, Plaintiff's relationship with Defendant terminated at the end of the thirteen-week period.

**STANDARD**

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. It is not the role of the trial judge "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Id. at 250. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255.

**DISCUSSION**

Defendant raises arguments for summary judgment as to each of the remaining ten counts in Plaintiff's Complaint. Accordingly, the Court will analyze the arguments as to each count separately. First, however, the Court must address the proper standard for this claim under the ADA.

**1.      Burden-Shifting and Mixed-Motives Analyses**

Plaintiff argues that pursuant to Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), he can proceed with his ADA claims under both the McDonnell Douglas burden-shifting approach and the Price Waterhouse mixed-motives approach. (Pls.' Opp'n Mem. at 20). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the U.S. Supreme Court established a burden-

4

shifting framework to determine whether an employer had a discriminatory motive in cases where the plaintiff only brings circumstantial evidence of discrimination.  Here, if the plaintiff establishes a *prima facie* case of discrimination, "then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).  If the defendant can proffer such a reason, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." Id.  However, under the mixed-motives framework set forth by the U.S. Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), as an alternative to making out a *prima facie* case with circumstantial evidence, plaintiff may present direct evidence of discrimination.  See Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998).  Once direct evidence is presented, the burden shifts to the defendant to show, by a preponderance of the evidence, that the same action would have been taken absent the illegitimate reason.  See also Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512-13 (3d Cir. 1997), cert. denied, 523 U.S. 1074 (1998).  Finally, in Desert Palace, the U.S. Supreme Court clarified the mixed-motives framework by holding that a mixed-motives jury instruction could be given in a Title VII case even if only circumstantial evidence of discrimination had been presented at trial.  Desert Palace, 539 U.S. at 101.  In the case *sub judice*, Plaintiff presents only circumstantial evidence of discrimination.[2]  As a result, Plaintiff specifically contends that—though Desert Palace is a Title

_____

[2] For the purposes of this Opinion, the Court will apply the McDonnell Douglas burden-shifting approach because Plaintiff has only presented circumstantial evidence of discrimination.  Plaintiff, however, argues that this is a case where direct evidence of discrimination exists, thereby requiring the Court to proceed under the Price Waterhouse mixed-motives framework.  (Pls.' Opp'n Mem. at 19, 35).  In attempting to establish that this is a direct evidence case, Plaintiff relies on the alleged statements made by manager Larri Ann Craig to Donald Wagner.  Craig allegedly stated, among other things, that she did not "want somebody like that at [her] front desk" and that Plaintiff "didn't present the image that she wanted."  (Wagner Dep. at 18).  Given the absence of additional evidence establishing

VII case—this opinion nonetheless allows him to proceed with his ADA claims under the Price Waterhouse mixed-motives framework even if he cannot establish direct evidence of discrimination.  (Pls.' Opp'n Mem. at 20).

Plaintiff's argument fails because the Title VII mixed-motives framework used in Desert Palace has not been extended to ADA claims in the summary judgment context.  See Chubirka v. Int'l Paper/xpedx Paper & Graphics, No. 04-5010, 2005 WL 1840170, at *3 n.6 (E.D. Pa. Aug. 2, 2005) ("Desert Palace . . . is inapplicable in this case inasmuch as Desert Palace addresses statutorily-based, post-trial jury instructions in a Title VII case, and has not been extended to ADA or ADEA claims in the summary judgment context by the Third Circuit."); Harp v. Southeastern Pennsylvania Transp. Auth., No. 04-2205, 2006 WL 1517390, at *6-7 (E.D. Pa. May 31, 2006) (same).  In post-Desert Palace, non-Title VII actions at the summary judgment stage, the U.S. Supreme Court has continued to apply the McDonnell Douglas burden-shifting approach.  See, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 50-51 (2003) (approving use of McDonnell Douglas framework at summary judgment stage in ADA disparate treatment action). The Third Circuit also has done so.  See, e.g., Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 761-62 (3d Cir. 2004) (using McDonnell Douglas framework in post-Desert

---

direct evidence of discrimination and the fact that these statements are ambiguous in that they do not explicitly address Plaintiff's disability, Plaintiff has not cleared the high evidentiary hurdle of Price Waterhouse at this stage of the litigation.  See, e.g., Armbruster v. Unisys Corp., 32 F.3d 768, 779 (3d Cir. 1994), abrogated on other grounds by Smith v. Borough of Wilkinsburg, 147 F.3d 272, 277 (3d Cir. 1998); Wooler v. Citizens Bank, No. 06-1439, 2006 WL 3484375, at *4 (E.D. Pa. Nov. 3, 2006), aff'd, 274 F. App'x 177 (3d Cir. 2008); see also Connors, 160 F.3d at 976.  The Court notes, however, that whether this is a pretext case or a mixed-motives case is a question to be answered once all the evidence has been received.  See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1098 (3rd Cir. 1995) (citing Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448 (8th Cir. 1993)).

<u>Palace</u> ADA action where plaintiff introduced only circumstantial evidence of disparate treatment), <u>cert. denied</u>, 544 U.S. 961 (2005).[3]

Thus, in an ADA action, if direct evidence of discrimination is produced, the <u>Price Waterhouse</u> framework applies; if circumstantial evidence of discrimination is produced, the <u>McDonnell Douglas</u> framework applies; if both kinds of evidence are produced, both frameworks apply. <u>See</u> <u>Glanzman v. Metro. Mgmt. Corp.</u>, 391 F.3d 506, 512 (3d Cir. 2004) (ADEA action); <u>Schellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 187 n.4 (3d Cir. 2003) ("Referring to these theories [pretext vs. mixed-motives] as though they . . . encompass two mutually exclusive legal theories is as troublesome as it is misleading."). As Plaintiff has failed to produce any direct evidence of unlawful discrimination, the Court will continue its analysis using the <u>McDonnell Douglas</u> burden-shifting framework. <u>See</u> <u>Mock v. Univ. of Pittsburgh at Johnstown</u>, No. 04-314, 2007 WL 2253602, at *12 n.6 (W.D. Pa. Aug. 3, 2007) (conducting same analysis and reaching same conclusion); <u>Harp</u>, 2006 WL 1517390, at *6-7 (same); <u>see also</u> <u>Gross v. FBL Fin. Servs., Inc.</u>, 526 F.3d 356, 359-60 (8th Cir. 2008) (holding that, except in Title VII cases covered by <u>Desert Palace</u>, a mixed-motive jury instruction cannot be given unless the plaintiff offers "direct evidence" of discrimination), <u>cert. granted</u>, 129 S. Ct. 680 (2008).[4]

---

[3] As a practical matter, the distinction between a pretext case and a mixed-motives case "lies in the kind of proof that an employee produces on the issue of bias, and the effect that the evidence has on the burden." <u>Starceski</u>, 54 F.3d at 1097.

[4] The Court notes that the U.S. Supreme Court has agreed to address this issue in <u>Gross v. FBL Fin. Servs., Inc.</u>, where the following question has been certified for review: "Must a plaintiff present direct evidence of discrimination in order to obtain a mixed-motive instruction in a non-Title VII discrimination case?" <u>See</u> <u>Gross</u>, 129 S. Ct. 680 (2008).

2.      **Wrongful Termination (Counts One and Two)**

In order to support a *prima facie* case of disability discrimination under the ADA and the

PHRA,[5] a plaintiff must establish that he: (1) has a "disability," (2) is a "qualified individual,"

and (3) has suffered an adverse employment action because of his disability.  Turner v. Hershey

Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006).  Defendant challenges whether Plaintiff is

"disabled" and whether he is a "qualified individual" under the ADA.  As a result, the Court will

focus on these two elements.

a.      **Disability**

Under the ADA and the PHRA, a "disability" is defined as either (1) a physical or mental

impairment that substantially limits one or more of the major life activities of such an individual;

(2) a record of such impairment; or (3) being regarded as having such an impairment.[6]  See

Marinelli v. City of Erie, 216 F.3d 354, 359 (3d Cir. 2000) (quoting 42 U.S.C. § 12102(2)(A)-

(C)).  "A major life activity need not constitute volitional or public behavior; it need not be an

activity that is performed regularly or frequently; but it does have to have importance to human

life comparable to that of activities listed in the regulatory examples."  Fiscus v. Wal-Mart

Stores, Inc., 385 F.3d 378, 384 (3d Cir. 2004).  A non-exhaustive list of major life activities

---

[5] Due to the similarities between the ADA and the PHRA, "Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts."  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (internal quotations omitted).

[6] Congress recently broadened how the ADA defines "disability" in the ADA Amendments Act of 2008.  See Pub. L. No. 110-325, § 4; 122 Stat. 3553 (2008).  President George W. Bush signed this legislation into law on September 25, 2008, and it became effective on January 1, 2009.  See Pub. L. No. 110-325, § 8.  Courts generally use the laws and interpretations that were in force when the complained-of acts occurred.  See Kiesewetter v. Caterpillar Inc., No. 08-2140, 2008 WL 4523595, at *1 (7th Cir. Oct. 9, 2008) (citing Landgraf v. USI Film Prods., 511 U.S. 244 (1994)).  These Amendments were not addressed by the parties.  However, since the alleged discrimination at issue in this case occurred in 2004, "the general presumption that legislation is to be applied only prospectively would most likely defeat any argument to the effect that the newly enacted statute should be applied in this case."  See Walstrom v. City of Altoona, No. 06-0081, 2008 WL 5411091, at *5 n.3 (W.D. Pa. Dec. 29, 2008); see also Ward v. Allied Van Lines, Inc., 231 F.3d 135, 141-42 (4th Cir. 2000).

covered by statute includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); Marinelli, 216 F.3d at 361 (internal citation and quotations omitted). "[T]o be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002).

It is undisputed that MS is an "impairment" that triggers the protection of the ADA when it is accompanied by a sufficient limitation. (Def.'s Mem. at 7). Thus, the question becomes whether Plaintiff's MS was accompanied by a substantial limitation of a major life activity at the time of his employment with Defendant. Plaintiff asserts that he is unable to care for himself and do manual tasks of such a variety as to constitute a severe restriction of a major life activity. Plaintiff alleges that his MS restricts his ability to bathe, wash himself, walk, lift, climb, run, endure high stress levels, and stand for long periods of time. (Compl. ¶ 17; Pls.' App. B, Pls.' Answer to Def.'s Request for Admissions No. 1; Pls.' App. C, Report of Dr. Dukkipati; Pls.' Sur-Reply at 2). Plaintiff's Response to Defendant's Motion for Summary Judgment further alleges restrictions of manual tasks, sexual relations, work, and his ability to care for himself. (Pls.' Opp'n Mem. at 10). The U.S. Supreme Court has suggested that "household chores, bathing, and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives." Toyota, 534 U.S. at 202. In Toyota, the Court ruled that the appeals court incorrectly disregarded evidence that, even after the plaintiff's condition had worsened, she was able to "brush her teeth, wash her face, bathe, tend her flower garden, fix breakfast, do laundry,

9

and pick up around the house," thus overlooking the precise type of manual tasks which are central to individuals' lives.  Id.

Here, Plaintiff alleges that he has (and had while he was employed) difficulty doing the following tasks: writing, combing his hair, brushing his teeth, getting in and out of bed, cooking, household chores, and bathing.  (Pls.' Stmt. of Facts ¶¶ 73-75; Pls.' App. B, Pls.' Answer to Def.'s Request for Admissions No. 1).  These impairments are precisely the type of manual tasks and self-care actions which the U.S. Supreme Court has suggested deserve examination.[7]  Unlike the plaintiff in Toyota, Plaintiff here has alleged an inability to do the type of activities which collectively meet the definition of "manual tasks."  Accordingly, the Court finds that these claims, as a whole, are sufficient to render summary judgment inappropriate as to the "disability" element.

### b.    Qualified Individual

A "qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); Turner, 440 F.3d at 611.  In evaluating whether Plaintiff is a qualified individual, the Court must decide the following: (1) whether Plaintiff has the requisite skill, experience, education and other job-related requirements of the position, and (2) whether Plaintiff, with or without reasonable accommodation, can perform the essential functions of the position.  See 29 C.F.R. § 1630.2(m); Turner, 440 F.3d at 611.  A

---

[7] It is worth noting, however, that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."  Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999).  More specifically, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  Id. at 482-83.

disabled individual's qualifications should be assessed according to his or her abilities at the time of the employment decision, and not at the time of the lawsuit.  Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).

Defendant contends, under the first prong, that Plaintiff lacked the requisite skill and experience necessary for his position as a front desk clerk/leasing consultant.  Plaintiff had previously made a career repairing HVAC systems and had no prior experience as a receptionist, secretary, or leasing consultant.  (Weirich Dep. at 9-11).  Defendant, however, admits that the front desk clerk/leasing consultant position was "basic" and "require[d] little skill or special training."  (Def.'s Mem. at 18).  Further, because Defendant hired Plaintiff for this position (Def.'s Stmt. of Facts ¶ 12), the Court infers favorably to Plaintiff as the non-moving party that Plaintiff had the requisite skill and experience to perform his duties.  See Peter v. Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 436 (E.D. Pa. 2002).  Therefore, the Court must turn to the second prong of the inquiry.

In order to determine whether a plaintiff, with or without a reasonable accommodation, could perform the essential functions of his position, a court must first consider whether he could have performed the essential functions of the job without an accommodation.  See Deane v. Pocono Med. Ctr., 142 F.3d 138, 146 (3d Cir. 1998) (en banc).  If the plaintiff could not have performed the essential functions of his job without an accommodation, then the court examines whether he could have performed the essential functions of his job with a reasonable accommodation.  See id.  If the plaintiff could not have performed the essential functions of his job even with a reasonable accommodation, then he has failed to set out a necessary element of his *prima facie* case.  See id.

11

From the record, there are numerous material facts in dispute addressing whether Plaintiff could perform the essential skills necessary for the front desk clerk/leasing consultant position without an accommodation.[8]  Plaintiff's supervisor, Larri Ann Craig, documented Plaintiff's alleged deficiencies over a two week period from April 5, 2004, through April 20, 2004.  (Craig Aff. Ex. 1).  According to this documentation, Plaintiff's deficiencies included difficulty answering multiple phone lines, promptly greeting customers, properly formatting typed letters, properly sorting and stamping the mail, and giving work to other employees.  (Id.).  Plaintiff's supervisor also documented the complaints of customers who thought Plaintiff was unhelpful and staff who were frustrated because he continuously asked for assistance.  (Id.).  Defendant also alleges that Plaintiff could not adequately complete, despite Craig's assistance, a spreadsheet on Microsoft Excel (Craig Dep. at 35-36), failed to organize the maintenance files for the 804 apartments at Briarcrest (Craig Aff. ¶ 5), and made basic errors on lease termination forms. (Craig Aff. ¶ 6).

Plaintiff disputes most, if not all, of these allegations.  Plaintiff contends that Craig never informed him of any problems he may have had answering multiple phone lines or the need for him to greet each visitor immediately as he or she walked through the door.  (Weirich Dep. at 57).  Plaintiff further states that he did not fail to properly format typed letters because Craig never told Plaintiff how she specifically wanted the letters formatted.  (Id. at 58-59).  Plaintiff denies that he was told by Craig how to use Microsoft Excel.  (Id. at 56; Pls.' Stmt. of Facts ¶ 21).  Furthermore, while Plaintiff admits that he did not complete the filing project concerning

---

[8] Plaintiff has not raised a material issue of fact with respect to whether a reasonable accommodation would have enabled him to perform these functions because Plaintiff's MS is unrelated to these alleged deficiencies in performance.  See Sweet v. Elec. Data Sys., Inc., No. 95-3987, 1996 WL 204471, at *9 (S.D.N.Y. Apr. 26, 1996).  Indeed, Plaintiff testified in his deposition that he was able to handle the responsibilities of this job without an accommodation.  (Weirich Dep. at 40); see infra Section 4.b.

the maintenance files for the 804 apartments at Briarcrest, he contends that he was not given the forms or materials necessary to complete the task. (Weirich Dep. at 52-56). Finally, while Plaintiff admits that Craig spoke to him about problems with his completion of lease termination forms, Plaintiff stated during his deposition that he corrected the errors. (Id. at 58-59). Given these material factual disputes between the parties, the question of whether Plaintiff could perform the essential functions of the front desk clerk/leasing consultant position should be determined by a jury.[9]  Accordingly, the Court will now examine whether Plaintiff can satisfy the pretext requirement of an ADA action.

    **c.**    **Pretext**

Because Plaintiff has presented enough facts to establish a *prima facie* claim of disability discrimination, Defendant now must show that it has met its burden to articulate a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff from the front desk clerk/leasing consultant position. See Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (describing this burden as being "relatively light"). Again, under the McDonnell Douglas burden-shifting framework, if Defendant offers such a reason, Plaintiff then has the burden to show that the proffered reason was a pretext for discrimination. See Olson, 101 F.3d at 951.

Defendant has met its "relatively light" burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff from the front desk clerk/leasing consultant position. According to Defendant, Plaintiff was terminated because he "did not have the requisite skills for the job," and Defendant has cited several examples of Plaintiff's performance

---

[9] There does not appear to be a disagreement over whether these tasks are essential to the front desk clerk/leasing consultant position. (Weirich Dep. at 33-34; McKenna Dep. at 33).

deficiencies.  (Def.'s Mem. at 19).  Now, Plaintiff must show that this proffered reason was a pretext for discrimination.

"In order to defeat a summary judgment motion after the defendant answers [the] plaintiff's *prima facie* case with legitimate, nondiscriminatory reasons for its action, the plaintiff must 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  <u>Olson</u>, 101 F.3d at 951 (quoting <u>Fuentes</u>, 32 F.3d at 764).  The parties appear to focus on the second prong.  (Pls.' Opp'n Mem. at 36-37; Def.'s Reply at 9).

As to the second prong addressing whether an invidious discriminatory reason was more likely than not the reason behind Defendant's action, the most relevant evidence presented by Plaintiff to establish pretext is Larri Ann Craig's alleged comments to Donald Wagner, then an employee of Defendant.  Here, Craig told Wagner—while Plaintiff was employed by Defendant—that she "does not want someone *like that* at her front desk" and that "[Plaintiff] didn't present the image that she wanted."  (Wagner Dep. at 18) (emphasis added).  Craig has disputed making these statements to Wagner.  (Def.'s Mem. at 36).  As to these comments, the Court has considered, among other factors, (1) the declarant's position in the corporate hierarchy, (2) the temporal connection between the statement and the challenged employment action, and (3) the purpose and content of the statement.  <u>Ryder v. Westinghouse Elec. Corp.</u>, 128 F.3d 128, 133 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1116 (1998); <u>see also</u> <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1112 (3d Cir. 1997).  Craig was one of the decision-makers in the termination of Plaintiff, and the statements were made at some point in 2004 prior to termination.

14

Furthermore, taking all reasonable inferences in favor of Plaintiff, it would not be unreasonable

for a jury to conclude both that (1) Craig's comments implicated Plaintiff's disability, and (2)

Plaintiff's termination from the front desk clerk/leasing consultant position was more likely than

not motivated by Plaintiff's disability.  See Santiago-Ramos v. Centennial P.R. Wireless Corp.,

217 F.3d 46, 55 (1st Cir. 2000) (discriminatory comments may raise an inference of pretext if

they are made by the decision-maker or those in a position to influence the decision-maker);

Armbruster v. Unisys Corp., 32 F.3d 768, 783 (3d Cir. 1994) (considering, among other things,

comments made by employer as a factor weighing in favor of pretext), abrogated on other

grounds by Smith v. Borough of Wilkinsburg, 147 F.3d 272, 277 (3d Cir. 1998); but see Ezold v.

Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-

decisionmakers or by decisionmakers unrelated to the decision process are rarely given great

weight, particularly if they were made temporally remote from the date of decision.").  Therefore,

summary judgment is denied as to Plaintiff's wrongful termination claim in counts one and two.

**3.      Failure to Hire (Counts Three and Four)**

In order to establish a *prima facie* case of failure to hire under the ADA and the PHRA,

Plaintiff must establish that: (1) he is a member of a protected class; (2) he sought and was

qualified for the available position; (3) he was rejected for the available position; and (4) a non-

member of the protected class was treated more favorably.  See Jones v. Sch. Dist. of

Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).  As discussed above, Plaintiff has presented

enough facts for a reasonable jury to conclude that he was disabled—and therefore a member of a

protected class—at the time of the adverse employment action.  It is undisputed that Plaintiff

sought and was rejected for a promotion to the service superintendent position.  It is also

undisputed that a non-member of the protected class, Bernard Dettrey, was hired for the position. Therefore, the only element to analyze is whether Plaintiff was "qualified" for the service superintendent position.  This position, to some degree, required the climbing of ladders.

      **a.**     **Qualified Individual**

      Again, a qualified individual is one "who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8) (emphasis added).  Thus, whether Plaintiff is qualified for the service superintendent position turns on whether climbing a ladder is an "essential function" of the position.  Plaintiff admittedly could not climb a ladder due to his MS condition at the time he applied for the promotion.  (Pls.' Stmt. of Facts ¶ 28; Weirich Dep. at 74).  He was restricted from doing so by his doctor.  (Weirich Dep. at 78).

      Plaintiff argues that climbing ladders is not an essential function of the service superintendent position.  He plans to present Lonnie Daniels, a prior service superintendent at Briarcrest, who will testify that Defendant could simply accommodate Plaintiff's disability by allowing other technicians to climb the ladders as the service superintendent's proxy in order to report damage and make repairs.  (Pls.' Opp'n Mem. at 29; Daniels Dep. at 28-29).  Also, Daniels will testify that when he was service superintendent, climbing a ladder constituted only about one percent of his job duties.  (Daniels Dep. at 28-29).  Plaintiff will also present evidence that climbing ladders is not listed as a job function on the official job description for the service superintendent position.  (Pls.' App. J, Notice of Job Vacancy).

      In contrast, Defendant argues that climbing a ladder is an essential job function of the service superintendent position.   Defendant claims that the job was "physically demanding" and

required the inspecting of apartment buildings, grounds, and roofs using ladders of two to four stories in height.  (Def.'s Mem. at 2).  Defendant also contends that leaks are a serious problem that are difficult to diagnose and mitigate.  (Id. at 31 n.6).  Therefore, the service superintendent must have experience and a trained eye in order to resolve a leak, and must be able to climb ladders to get up on roofs to make inspections and decisions as to repair.  (Id.).

"[W]hether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] *all* relevant evidence.'"  Deane, 142 F.3d at 148 (quoting 29 C.F.R. § 1630.2(n)).  Whether a job duty is an "essential function" turns on whether it is "fundamental" to the employment position.  29 C.F.R. § 1630.2(n)(1).  Evidence of whether a particular function is essential includes, but is not limited to: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of the collecting bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs.  29 C.F.R. § 1630.2(n)(3).

After consideration of these factors, the Court determines that there are factors that support both parties' arguments as to whether climbing a ladder is an essential function of the service superintendent position.  This is a determination normally made by a jury.  See Turner, 440 F.3d at 613 ("[W]e have historically refused to make such a factual finding [regarding essential functions] on our own, lest we run afoul of our own directive to the district courts that these issues are for the jury to decide.");  Deane, 142 F.3d at 148 (holding that, since

determining whether a particular function is essential is factual and made on a case-by-case basis, a genuine issue of material fact exists). Thus, as Plaintiff has presented sufficient evidence to establish a *prima facie* claim of failure to hire, the Court must next engage in a pretext analysis.

**b.     Pretext**

Even if the facts in this case are construed to establish a *prima facie* case, Plaintiff cannot satisfy the pretext requirement. Defendant correctly contends that, even if Plaintiff has established a *prima facie* case, Defendant has met its burden under the McDonnell Douglas framework to articulate a legitimate, nondiscriminatory reason for its decision not to hire Plaintiff for the service superintendent position. See Olson, 101 F.3d at 951 (applying McDonnell Douglas framework in ADA failure to hire case); Fuentes, 32 F.3d at 763 ("The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."). Defendant asserts two nondiscriminatory reasons: (1) Plaintiff only had ten months of supervisory experience between the years 1993 and 1998, while the candidate ultimately hired for the service superintendent position, Bernard Dettrey, had seventeen years of experience in apartment maintenance and supervision; and (2) Plaintiff could not perform the physical aspects of the position and could not climb ladders. (Def.'s Mem. at 25-27). Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for not hiring Plaintiff for the service superintendent position. Accordingly, the final question is whether Plaintiff can defeat Defendant's summary judgment motion as to this claim by pointing to some evidence from which a reasonable jury could conclude that Defendant's proffered reasons are pretexts for discrimination.

18

Again, "[i]n order to defeat a summary judgment motion after the defendant answers plaintiff's *prima facie* case with legitimate, nondiscriminatory reasons for its action, the plaintiff must 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Olson, 101 F.3d at 951 (quoting Fuentes, 32 F.3d at 764). The debate between the parties appears to be focused on the first prong, as Plaintiff has proffered no evidence that an invidious discriminatory reason was more likely than not the motivating cause of Defendant's action.[10] To discredit the employer's articulated legitimate reasons, "[t]he plaintiff 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Id. at 951-52 (quoting Fuentes, 32 F.3d at 765; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); Fasold v. Justice, 409 F.3d 178, 185 (3d Cir. 2005).

Plaintiff asserts that Dettrey was not qualified for the position, and therefore the Defendant's reason to not hire Plaintiff based on Plaintiff's lack of supervisory experience was nothing more than a pretext for disability discrimination. (Pls.' Opp'n Mem. at 30). Plaintiff, however, does not dispute Dettrey's seventeen years of supervisory and maintenance experience. (Pls.' Stmt. of Facts ¶ 32). Plaintiff's argument that Dettrey is less qualified is wholly

---

[10] Plaintiff does not appear to argue in his Opposition to Defendant's Motion for Summary Judgment that Larri Ann Craig's alleged statements to Donald Wagner regarding the front desk clerk/leasing consultant position constitute circumstantial evidence that Defendant did not hire Plaintiff for the service superintendent position due to his disability.

conclusory, with Plaintiff having admitted at deposition that he is not familiar with the experience Dettrey accumulated during the ten years prior to Dettrey's acceptance of the service superintendent position.  (Pls.' Dep. at 80-81).  To show pretext, Plaintiff must establish more than a denial of a position as a result of a dispute over qualifications.  See Bennun v. Rutgers State Univ., 941 F.2d 154, 170 (3d Cir. 1991).  Additionally, while Plaintiff may not agree with Defendant's evaluation of Plaintiff's qualifications, an employee's differing perception of his own experience cannot establish pretext.  See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) ("[W]hat matters is the perception of the decision maker.  The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."), abrogated on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); see also id. ("Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions.").

Plaintiff also claims that a factfinder could reasonably disbelieve Defendant's reason that it did not hire Plaintiff because he could not climb a ladder or perform the other functions of the service superintendent position.  This argument relies on the following evidence: (a) the testimony of Lonnie Daniels that the climbing of ladders constituted one percent of the service superintendent's duties, and (b) that an accommodation could have been given to Plaintiff relieving him of these climbing duties as service superintendent.  (Pls.' Opp'n Mem. at 37-38). Plaintiff, however, does not dispute the fact that he could not climb ladders.  (Pls.' Stmt. of Facts ¶ 28).  Moreover, while these facts addressing the marginal or essential nature of ladder climbing are relevant in determining whether Plaintiff is a "qualified" individual, they do not show pretext.

See Dooley v. Roche Lab Inc., 275 F. App'x 162, 165 (3d Cir. 2008).  Given Plaintiff's admission that he could not climb ladders, Plaintiff has not presented sufficient evidence to discredit this proffered reason for not hiring Plaintiff.  "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]."  Keller, 130 F.3d at 1109 (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)); see also St. Mary's Honor Center, 509 U.S. at 515 ("But a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."); Reeves, 530 U.S. at 148 ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").  Accordingly, because Plaintiff has shown no evidence, either circumstantial or direct, from which a reasonable factfinder could conclude that Defendant engaged in wrongful discrimination in deciding to not hire Plaintiff, summary judgment is appropriate as to counts three and four of Plaintiff's Complaint.

## 4.    Failure to Reasonably Accommodate (Counts Five and Six)

### a.    Exhaustion of Administrative Remedies

Defendant argues that Plaintiff failed to exhaust his administrative remedies with regard to his claims for failure to reasonably accommodate under the ADA and the PHRA.  This argument, however, was addressed and rejected in the Court's Memorandum Opinion dated July 11, 2007.  (Doc. No. 8); see also Weirich v. Horst Realty Corp., LLC, No. 07-871, 2007 WL

2071904, at *2-3 (E.D. Pa. July 13, 2007).  Accordingly, the Court relies on its previous ruling

that Plaintiff exhausted his administrative remedies as to his claims for failure to reasonably

accommodate.

      **b.**    **Merits of Claim**

The ADA defines "discrimination" as, among other things, "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee."  42 U.S.C. § 12112(b)(5)(A).  However,

discrimination does not exist if the employer "can demonstrate that the accommodation would

impose an undue hardship on the operation of the business."  Id.  In order for Plaintiff to

establish a *prima facie* case for failure to accommodate, he must demonstrate the following: (1)

he had a disability; (2) the employer had notice of this disability; (3) he can perform the essential

functions of his position with a reasonable accommodation; and (4) the employer failed to

provide a reasonable accommodation.  Johnson v. McGraw-Hill Cos., 451 F. Supp. 2d 681, 701

(W.D. Pa. 2006).

Plaintiff's Complaint specifically alleges that Defendant failed to provide reasonable

accommodations to Plaintiff for the service superintendent and front desk clerk/leasing

consultant positions under the ADA and the PHRA.  (Compl. ¶ 73).  He also alleges that

Defendant refused to make reasonable accommodations for him in any positions for which he

applied.[11]  (Id.).  Plaintiff's responses to questions asked during his deposition make clear that he did not need a reasonable accommodation as to any position.

With regard to the service superintendent position, there is no evidence Plaintiff ever worked in this capacity while employed by Defendant Horst Realty Company, LLC.  Rather, Plaintiff applied for this position on March 30, 2004.  (Def.'s Stmt. of Facts ¶ 27).  Plaintiff, by his own admission, began his employment with Defendant in the front desk clerk/leasing consultant position.  (Pls.' Dep. at 30).  Therefore, because "[a]ccommodation regards efforts that address the individual's ability to perform a job, not his entitlement to it," the Court will not consider Plaintiff's accommodation argument regarding the service superintendent position.  See Antol v. Perry, 82 F.3d 1291, 1300 (3d Cir. 1996); see also Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 457 (6th Cir. 2004) ("The ADA does not require an employer to offer an employee a promotion as a reasonable accommodation . . . .").

As to the front desk clerk/leasing consultant position, Plaintiff testified in his deposition that he was able to handle the responsibilities of the job without an accommodation.  Plaintiff testified as follows:

Q.      Were you able to do the office job position without an accommodation?

A.      Yes.

(Weirich Dep. at 40).

Q.      So your MS didn't affect your ability to do the office position?

---

[11] Plaintiff's allegation that Defendant refused to "make reasonable accommodations to [him] in any of the positions for which he applied" (Compl. ¶ 75) is not cognizable as a claim for failure to reasonably accommodate.  This allegation appears to argue that Defendant discriminated against Plaintiff by not considering him qualified for a position for which he applied, even though he could perform its duties with a reasonable accommodation.  This argument aids in proving an element of his *prima facie* case for failure to hire, and thus has been considered as to that claim.  See also Antol v. Perry, 82 F.3d 1291, 1300 (3d Cir. 1996) (holding that, because "[a]ccommodation regards efforts that address an individual's ability to perform a job, not his entitlement to it[,] . . . . . the district court appropriately did not analyze [plaintiff's] case as one involving the duty of reasonable accommodation").

A.      No.

(Id. at 41).

Plaintiff's PHRC Intake Questionnaire provides additional evidence that he did not request, was

never refused, and did not need a reasonable accommodation.  Plaintiff answered the relevant

questions as follows:

15b.    From whom did you request a reasonable accommodation?

Answer: "?" . . . .

16.     Did the Respondent [Horst Realty] refuse the request for a reasonable
accommodation?

Answer: "No"

(Def.'s Ex. M, PHRC Intake Questionnaire at 10).

Finally, Plaintiff expressly states in his PHRC complaint that "I can perform all the

essential functions of my job without an accommodation."  (PHRC Compl. ¶ 33).  Since Plaintiff

admits he did not need an accommodation, did not ask for an accommodation, and was not

refused an accommodation, there is no issue of triable fact as to counts five and six.  See Taylor

v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999) (holding that an employer's duty to

engage in the interactive process is triggered when the employer knows of the disability *and of

the employee's desire for accommodation*); see also Conneen v. MBNA Am. Bank, N.A., 334

F.3d 318, 331 (3d Cir. 2003) ("Although an employer is liable for discriminating against an

employee in need of accommodation based upon the employee's *known* disability, neither the

law nor common sense can demand clairvoyance of an employer in [the defendant's] position.").

24

5.     **Disability Harassment (Counts Seven and Eight)**

A claim for disability harassment requires a showing that: (1) Plaintiff is a qualified

individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the

harassment was based on his disability or a request for an accommodation; (4) the harassment

was sufficiently severe or pervasive to alter the conditions of his employment and to create an

abusive working environment; and (5) Defendant knew or should have known of the harassment

and failed to take prompt effective remedial action.  Walton v. Mental Health Ass'n of

Southeastern Pennsylvania, 168 F.3d 661, 667 (3d Cir. 1999).

While Plaintiff cannot satisfy its burden as to several of these elements, the Court will

focus primarily on the fourth element.  To prove an abusive work environment, the environment

must be shown to be "objectively hostile or abusive, and the plaintiff must have perceived it as a

hostile or abusive work environment."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).  In

order to determine whether Plaintiff's work environment was hostile or abusive, the Court must

consider all the circumstances, including the following: "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it reasonably interferes with an employee's work performance."  Id. at 23.

Plaintiff has not demonstrated that Defendant's alleged conduct was sufficiently severe or

pervasive under the Harris standard.  Plaintiff's allegations of disability harassment consist of the

following: (1) his supervisor gave him assignments that were impossible to perform; (2) he was

refused sick leave; (3) Defendant purposefully changed the job duties of the service

superintendent position to include climbing ladders in order to exclude him from the position;

and (4) his supervisor allegedly made statements to another employee that she does not want

25

someone like Plaintiff at the front desk and that she cares about the image of the company. (Compl. ¶ 83; Pls.' Opp'n Mem. at 40-42).

The assignment that Plaintiff alleges was impossible to perform required him to organize the maintenance files for all 804 apartments at Briarcrest into manila folders. (Weirich Dep. at 52). His supervisor told him how she expected the task to be completed, and Plaintiff admits that it would take approximately a half-hour to assemble each folder. (Id. at 53-54, 175). He states in his deposition that this task was "impossible" because he did not have the correct size manila folders, which he requested from his supervisor but with which he was never supplied. (Id. at 54-55). The denial of a specific type of office supply in one instance does not rise to the level of severe or pervasive harassment and, even if it did, Plaintiff presents no evidence, direct or circumstantial, to show that Defendant's failure to provide the properly-sized manila folders was based on his disability.

The second allegation of disability harassment arises out of Defendant's alleged denial of sick leave to Plaintiff. During his employment with Defendant, however, Plaintiff admits he was never prevented from taking sick time and never attempted to take sick time. (Weirich Dep. at 119-20). Therefore, this allegation is meritless and does not support a finding that a hostile work environment existed under the Harris standard.

Plaintiff's third allegation in support of his claim for disability harassment is that Defendant purposely altered the job duties of the service superintendent position to include climbing ladders, a task Defendant knew Plaintiff was unable to complete. Again, this evidence does not support a cognizable claim for disability harassment because it is not evidence of severe or pervasive conduct. Cf. Fox v. Gen. Motors Corp., 247 F.3d 169, 179 (4th Cir. 2001)

(harassment sufficiently severe and pervasive where supervisors consistently berated and harassed employee and other disabled workers using vulgar and profane language, encouraged other employees to ostracize disabled workers, and required employee to perform tasks beyond his medical restrictions).  Even if the Court was to believe that Defendant purposefully changed the duties of the service superintendent position with the objective of preventing Plaintiff from being qualified or discouraging him from applying, this does not constitute harassment, let alone severe or pervasive harassment.  These allegations address Plaintiff's failure to hire claim, and not his claim for disability harassment.

Plaintiff's final evidence of disability harassment consists of the alleged comments by his supervisor, Larri Ann Craig, in which she told another employee that she "does not want someone like that at her front desk," that "[Plaintiff] didn't present the image that she wanted," and that "[Plaintiff] does not look good out there," in addition to other comments about his physical disability.  (Compl. ¶ 83; Wagner Dep. at 18; Weirich Dep. at 116).  As discussed above, Plaintiff must show that Defendant's conduct was so severe or pervasive as to constitute a hostile work environment.  Implicit in this requirement is Plaintiff's awareness of the discrimination.  In this case, however, Plaintiff admits he learned about these alleged statements from another former employee *after* his employment ended, and that Craig never made these comments directly to him.  (Weirich Dep. at 116-117).  In fact, he admits that none of Defendant's employees ever made a derogatory remark directly to him about his disability.  (Id. at 110).  Therefore, since Plaintiff was unaware of the alleged comments during his employment, he could not have perceived this environment as hostile or abusive.  See Moyer v. Kaplan Higher Educ. Corp., 413 F. Supp. 2d 522, 527 (E.D. Pa. 2006) (holding, as a matter of law, that cursing,

27

especially when not directed specifically at plaintiff, does not create an abusive working environment under Title VII). Thus, Plaintiff's allegations are insufficient to support a claim of disability harassment under the <u>Harris</u> standard.

**6.     Failure to Train (Counts Seven and Eight)**

In counts seven and eight of the Complaint, Plaintiff also appears to present a separate claim that Defendant failed to train him for the front desk clerk/leasing consultant position, while training was given to other non-disabled employees, in violation of the ADA and the PHRA. (Compl. ¶ 82; Pls.' Opp'n Mem. at 31); <u>see</u> <u>Miller v. Berry Metal Co.</u>, 80 F. App'x 245, 247 (3d Cir. 2003) (a company's failure to train can constitute an adverse employment decision as part of a plaintiff's *prima facie* case for discrimination). Plaintiff, however, presents no evidence to support this claim. In fact, his own deposition testimony contradicts this contention. Plaintiff admits to having four hours of one-on-one training with Pam, a leasing consultant, who was previously employed in the front desk clerk position. (Weirich Dep. at 46-47). Also, shortly after beginning his employment with Defendant, he attended a five-hour training class on the Management Reports International software, which was used by Defendant's employees to track leasing information for the apartments. (<u>Id.</u> at 49). Further, Plaintiff admits that it was his obligation to obtain independent real estate licensing training for which he would be reimbursed. (<u>Id.</u> at 46). He never obtained this additional training. (<u>Id.</u>). Plaintiff also admits he never requested additional training from Craig. (<u>Id.</u> at 52). Finally, Plaintiff admits that he never saw any other non-disabled workers being trained for his position, and he has no knowledge of any non-disabled worker receiving the training that he desired. (<u>Id.</u> at 47-48). Accordingly, his

allegations are completely speculative and do not support a claim for failure to train in counts seven and eight.

**7.     Retaliation (Count Nine)**

    **a.     Exhaustion of Administrative Remedies**

Defendant again asserts that Plaintiff did not exhaust his administrative remedies with regard to the retaliation claim.  As stated in Section 4.a. above, the Court has ruled on this issue in its Memorandum Opinion dated July 11, 2007.  (Doc. No. 8); see also Weirich, 2007 WL 2071904, at *2-3.  Again, the Court relies on its previous ruling in finding that Plaintiff exhausted his administrative remedies as to the retaliation claim.

    **b.     Merits of Claim**

Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]."  42 U.S.C. § 12203(a); see also 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show (1) the existence of a protected employee activity; (2) the existence of an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.  Williams, 380 F.3d at 759.  A showing that one engaged in a "protected employee activity" requires allegations that Plaintiff "opposed any act or practice made unlawful by the ADA" or assertions that he "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under the ADA."  See Montanye v. Wissahickon Sch. Dist., 218 F. App'x 126, 131 (3d Cir. 2007) (internal quotations omitted).

Plaintiff makes the unsupported assertion in his Complaint that "[w]henever [Plaintiff] Weirich attempted to oppose the unlawful discriminatory practices of [Defendant] Horst Realty, Horst Realty took retaliatory adverse actions against Weirich because of his opposition . . . ." (Compl. ¶ 91). Defendant properly argues that Plaintiff's Complaint does not identify (nor does the record reflect) any acts undertaken by Plaintiff to oppose Defendant's alleged unlawful discriminatory practices. (Def.'s Mem. at 39-40). Plaintiff never complained about disability discrimination to anyone in management. (Weirich Dep. at 43-44). After his layoff, he never complained to anyone in Human Resources that he felt he was discriminated against because of his disability or for any other reason. (Id.; Craig Dep. at 107-08; Keener Dep. at 78). As such, Plaintiff cannot support a claim for retaliation because he never engaged in conduct that could be considered a "protected employee activity." Thus, count nine must fail.

### 8.   Constructive Discharge (Count Ten)

#### a.   Exhaustion of Administrative Remedies

Defendant asserts that Plaintiff did not exhaust his administrative remedies with regard to the constructive discharge claim. As stated in Section 4.a. and 7.a. above, the Court has ruled on this issue in its Memorandum Opinion dated July 11, 2007. (Doc. No. 8); see also Weirich, 2007 WL 2071904, at *2-3. Again, the Court relies on its previous ruling in finding that Plaintiff exhausted his administrative remedies as to his claim of constructive discharge.

#### b.   Merits of Claim

"Constructive discharge occurs when an 'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n.4 (3d Cir. 2006) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 887 (3d Cir. 1984)); see also 42 U.S.C. § 2000e-2(a).

30

"'To prove constructive discharge the plaintiff must demonstrate a *greater* severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'"  <u>Spencer</u>, 469 F.3d at 317 n.4 (quoting <u>Landgraf v. USI Film Prods.</u>, 968 F.2d 427, 430 (5th Cir. 1992), <u>aff'd</u>, 511 U.S. 244 (1994)) (emphasis added).

The Court finds no evidence to support Plaintiff's constructive discharge claim.  In fact, Plaintiff makes allegations in his Complaint that he was affirmatively discharged.  (Compl. ¶¶ 39, 51).  Further, as stated above in Section 5, Plaintiff's allegations do not meet the severe or pervasive standard necessary to establish a claim of disability harassment.  Since a claim for constructive discharge requires proof of *greater* severity or pervasiveness than that required for a hostile work environment claim, Plaintiff cannot support a claim for constructive discharge in count ten.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN L. WEIRICH, et al.   :
           :
     Plaintiffs  : CIVIL ACTION
           :
   vs.       :
           : NO. 07-cv-871
HORST REALTY COMPANY, LLC :
           :
     Defendant  :

## **ORDER**

AND NOW, this 24th day of March, 2009, upon consideration of Defendant Horst Realty Company, LLC's Motion for Summary Judgment, Plaintiff's Response, Defendant's Reply, Plaintiff's Sur-reply, and all appended exhibits, it is hereby ORDERED that this Motion (Doc. No. 33) is GRANTED in part and DENIED in part.

Judgment is GRANTED in favor of Defendant Horst Realty Company, LLC and against Plaintiffs as to Counts Three, Four, Five, Six, Seven, Eight, Nine, and Ten of the Complaint. Defendant's Motion for Summary Judgment is DENIED as to Counts One and Two of the Complaint.

          BY THE COURT:


          */s/ Thomas M. Golden*     
          THOMAS M. GOLDEN, J.