IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN L. WEIRICH, et al.,       :
                                  :
           Plaintiffs   :  CIVIL ACTION
                                  :
       vs.                  :
                                  :  NO.  07-cv-871
HORST REALTY COMPANY, LLC   :
                                  :
          Defendant   :

## <u>MEMORANDUM OPINION & ORDER</u>

GOLDEN, J.                                                    MARCH 27, 2009

Before the Court is Defendant Horst Realty Company, LLC's Motion to Preclude from Evidence both the Expert Testimony of John S. Risser ("Risser") and Risser's "Assessment of Employment Potential" (hereinafter "Report" or "Expert Report").  (Doc. No. 34).  After careful consideration of the briefs submitted by the parties and the exhibits appended thereto, Defendant's Motion is granted in part and denied in part.[1]

## FACTUAL BACKGROUND

In this matter, Plaintiff Brian L. Weirich alleges that Defendant Horst Realty Company, LLC wrongfully terminated him from his Front Desk Clerk/Leasing Consultant position on the basis of his disability—namely, his multiple sclerosis ("MS") condition—in violation of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*., and the Pennsylvania Human Relations Act, 43 Pa.

---

[1] Defendant has, by letter, requested a hearing pursuant to <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).  Plaintiff believes that a hearing is unnecessary.  In lieu of a <u>Daubert</u> hearing, the Court requested and received supplemental briefs further addressing the <u>Daubert</u>-related matters in Defendant's Motion.  A District Court's decision whether or not to hold a <u>Daubert</u> hearing rests with the sound discretion of the court.  See <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 152-53 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 921 (2001).  A <u>Daubert</u> hearing is not necessary as the parties have extensively briefed the issues and examined Risser's conclusions, analyses, and methodologies.  Plaintiff has sufficiently addressed Defendant's contentions and there is more than enough evidence in the record for the Court to examine the issues raised.  In essence, this is not the "more complex case[] where cause for questioning the expert's reliability arises."  See <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999).

Cons. Stat. Ann. § 951, *et seq*.  In September 2001, Plaintiff was hired by non-party Horst Property

Management, Inc. as an HVAC Technician at the Briarcrest Gardens apartment complex

("Briarcrest").  In February 2004, Plaintiff left this position and became a Front Desk Clerk/Leasing

Consultant while employed by non-party Horst Property Management, Inc.  When Defendant Horst

Realty Company, LLC assumed property management duties of Briarcrest on March 1, 2004 from

Horst Property Management, Inc., Plaintiff remained in his Front Desk Clerk/Leasing Consultant

position.  In mid-May 2004, Defendant terminated Plaintiff's employment.  Since April 2005,

Plaintiff has worked as an HVAC Technician for the Commonwealth of Pennsylvania's Department

of General Services.  (Risser Report at 5 ¶ 8, Def.'s Ex. A).

## RISSER'S REPORT

John S. Risser has been proffered by Plaintiff as a vocational rehabilitation expert to testify

as to what effect, if any, Plaintiff's termination of employment by Defendant Horst Realty

Company, LLC had on Plaintiff's (a) potential for engaging in work-related activities and (b) wage

earning capacity/earning power.  (Id. at 1).  It is worth noting that Defendant does not claim that

Risser is unqualified to testify as a vocational expert.  (Def.'s Supp. Br. at 2).

Using various methodologies and vocational scenarios, Risser estimates the past and future

wage loss allegedly suffered by Plaintiff as a result of Defendant's adverse employment action.

These calculations are premised on several assumptions made by Risser, including, among other

things, various factual scenarios and Plaintiff's work-life expectancy.  For example, in "Vocational

Scenario #2," Risser calculates a future wage loss figure of approximately $65,700 assuming that

(1) Defendant did not terminate Plaintiff and rather allowed Plaintiff to work as an HVAC

Technician after May 2004 and (2) Plaintiff would work until he reached the age of 59.35 years.

(Risser Report at 12).  Risser also calculates a past wage loss of $54,000 as a result of Defendant's

adverse employment action.  (Id. at 10).  Defendant has made a number of objections to Risser's

Report, which Defendant claims justify the preclusion of Risser's Report and testimony at trial.

These objections are addressed below.

**STANDARD**

"When a party seeks to admit expert testimony, the District Court must make an initial

determination under Fed. R. Evid. 104(a) that the requirements of Fed. R. Evid. 702 have been

met."  Magistrini v. One Hour Martinizing Dry Cleaning, 68 F. App'x 356, 356 (3d Cir. 2003); see

also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993).  Rule 702 of the Federal

Rules of Evidence requires that "the proffered evidence possesses sufficient evidentiary reliability to

be admissible as scientific, technical, or other specialized knowledge and that the proffered evidence

is relevant in the sense that it will assist the trier of fact to understand the evidence or to determine a

fact in issue."  United States v. Ford, 481 F.3d 215, 218 (3d Cir. 2007), cert. denied, 128 S. Ct. 213

(2007).  Under Rule 702, a court may admit proffered expert testimony only if the proponent

demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the

evidence is reliable.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).  The evidence

presented must be "helpful to the jury's evaluation of such evidence."  Elcock v. Kmart Corp., 233

F.3d 734, 744 (3d Cir. 2000).  A court acts as a gatekeeper in determining the admissibility of expert

testimony.  Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (citing Daubert, 509 U.S. at

589).  This gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge,

but also to testimony based on 'technical' and 'other specialized' knowledge."  Kumho Tire, 526

U.S. at 141.  "The judge's inquiry is a flexible one, with the burden falling on the expert's

proponent to establish the reliability and admissibility of the expert's testimony by a preponderance

of the evidence."  Martin v. Yellow Transp., Inc., No. 05-2958, 2006 WL 494880, at *2 (E.D. Pa.

3

Feb. 28, 2006).  The Federal Rules of Evidence "embody a strong preference for admitting any evidence that may assist the trier of fact."  <u>Kannankeril v. Terminix Int'l, Inc.</u>, 128 F.3d 802, 806 (3d Cir. 1997).

**ANALYSIS**

**A.     Personal Trauma and Emotional Harm**

Defendant argues that the portion of Risser's Report referencing "personal trauma and emotional harm" exceeds the scope of Risser's qualifications, thereby justifying preclusion of Risser's Report and expert testimony.  (Def.'s Br. at 4).  In making this argument, Defendant specifically references the following statement by Risser in his Report: "However, any reader of this report must recognize that statistics on displaced workers do not include forensic matters involving litigation, rather they most often relate to corporate downsizing, plant shutdowns, etc., and as such do not involve the *personal trauma and emotional harm* which can follow the idiosyncratic path of cases which involve single individuals who are removed from their workplace for varied and diverse reasons which end up being litigated."  (Risser Report at 9 ¶ 2) (emphasis added).  As Plaintiff correctly notes in his brief, this statement is not opining as to whether Plaintiff suffered from such emotional harm—an opinion which likely would be outside the scope of Risser's qualifications.  (Pl.'s Br. at 3).  Accordingly, this portion of Risser's Report will not be stricken and an attack on this statement can be adequately conducted on cross-examination by Defendant.  <u>See</u> <u>Daubert</u>, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

4

**B.**     **Risser's Statements on Plaintiff's Qualifications**

Defendant also claims that Risser's Report offers commentary addressing the appropriateness of Defendant's employment decisions that is unhelpful to a trier of fact. (Def.'s Br. at 2). In his Report, Risser states, among other things, that Plaintiff has received work as an HVAC Technician for the Commonwealth of Pennsylvania at a lower pay scale than "if he had been *appropriately promoted* to maintenance supervisor [Service Superintendent]." (Risser Report at 13 ¶ 1) (emphasis added). Risser also states that Plaintiff was "eminently qualified" for the Service Superintendent position, to which Plaintiff was not promoted. (Id.). Defendant claims that these portions of Risser's Report, among others, go directly to liability, thereby invading the province of the jury. (Def.'s Br. at 5-6).

To the extent that these statements by Risser are relevant in light of the Court's March 24, 2009 summary judgment opinion dismissing Plaintiff's failure to hire claim (Doc. No. 56), the Court finds that Risser is in no better a position than a jury to assess whether Plaintiff was "appropriately promoted" or "eminently qualified" for various positions with Defendant, and therefore such statements invade the province of the jury. Risser, like any expert, must offer testimony that is helpful to the jury. See Blakey v. Continental Airlines, Inc., No. 93-2194, 1997 WL 1524797, at *4 (D.N.J. 1997). These statements by Risser go to the heart of whether Plaintiff was "qualified" for the essential aspects of the Service Superintendent position—a necessary element of a *prima facie* claim for disability discrimination. See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). Accordingly, Risser cannot testify as to these points, and such portions of his Report shall be stricken. See Earle M. Jorgensen Co. v. T.I. U.S. Ltd., No. 90-2024, 1992 WL 331466, at *1 (E.D. Pa. Nov. 3, 1992). However, because the statements at issue are only

"stray comments," the Court will not preclude Risser's Report or testimony in their entirety.  See

Domingo v. T.K., 289 F.3d 600, 607 (9th Cir. 2002).

**C.    Bias**

      Defendant also contends that Risser's testimony is plagued with bias and therefore should be

excluded.  (Def.'s Br. at 2-3).  Defendant cites, for example, Risser's statements that Plaintiff "is to

be commended for his diligent efforts to rehabilitate himself" (Risser Report at 5 ¶ 1) and that a

disabled person "should be commended for his work ethic and diligence in maintaining himself

personally in spite of his medical condition." (Id. at 9 ¶ 4).  Even if the Court were to interpret these

statements as "bias," the Third Circuit Court of Appeals has held that "expert witnesses cannot be

excluded on the basis of bias." In re Unisys Sav. Plan Litig., 173 F.3d 145, 166 n.11 (3d Cir. 1999),

cert. denied, 528 U.S. 950 (1999).  After all, "[a]ll experts have some bias, and a jury may take such

bias into account when evaluating the credibility of a witness' testimony." Popovich v. Sony Music

Entm't, No. 02-359, 2005 WL 1126756, at *6 (N.D. Ohio May 2, 2005), aff'd, 508 F.3d 348 (6th

Cir. 2007).  Accordingly, Defendant's bias concerns address credibility and weight, not

admissibility, and can adequately be addressed on cross-examination.

**D.    Factual Foundation**

      Defendant further claims that Risser's conclusions are not based upon proper factual

foundation under Fed. R. Evid. 703 and are not "tied to the facts of the case" under Fed. R. Evid.

702. (Def.'s Br. at 6).  Defendant states that Risser failed to, among other things, study Defendant's

personnel files, reconstruct the underlying facts of the case, review the deposition testimony of

Defendant's employees, inspect the Briarcrest facilities, and perform vocational testing.  (Id. at 4-5,

7).  Defendant further contends that Risser's failure to review these items led to Risser making

several erroneous assumptions without any factual basis.  (Id. at 7-12).  These supposedly erroneous

assumptions are as follows: (1) Risser's use of Plaintiff's 2003 $15.45/hour pay rate (extrapolated to

$17/hour in 2008 dollars) from Plaintiff's position as an HVAC Technician as part of Risser's

"Vocational Scenario #2" without considering the fact that Plaintiff was transferred in February

2004 to the Front Desk Clerk/Leasing Consultant position—a position with a lower $11.12/hour

2004 pay rate (see Risser Report at 6 ¶ 2); (2) Risser's failure to consider other positions offered to

Plaintiff in determining whether Plaintiff fully mitigated his "negative employment circumstances";

(3) Risser's use of a 29% fringe benefits figure derived by the Bureau of Labor Statistics, when the

figure should be approximately 15% based on the fringe benefits given by Defendant Horst Realty

Company, LLC to its employees (see id. at 11-12); and (4) Risser's statement that Plaintiff

graduated from Middletown Area High School in Middletown, Pennsylvania in 1987, when Plaintiff

actually left high school prior to the twelfth grade and subsequently completed his GED in the late

1980s (see id. at 5).  (Def.'s Br. at 7-12).  These foundational issues, however, can be addressed on

cross-examination.

      Under Rule 702, a District Court's gatekeeping inquiry must be "tied to the facts of the

case."  See United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985); see also Oddi v. Ford

Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) ("A court must examine the expert's conclusions in

order to determine whether they could reliably flow from the facts known to the expert and the

methodology used.  A court may conclude that there is simply too great a gap between the data and

the opinion proffered.") (internal quotations and citation omitted), cert. denied, 532 U.S. 921

(2001).  Further, under Rule 703, an expert "may rely on facts from firsthand knowledge or

observation, information learned at the hearing or trial, and facts learned out of court."  Stecyk v.

Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002).  A District Court abuses its

discretion if it admits expert testimony that "is based on assumptions lacking any factual foundation in the record."  Id. (citing Elcock, 233 F.3d at 756 n.13).  In addition, "[t]he test for admissibility is not whether a particular scientific opinion has the *best* foundation, or even whether the opinion is supported by the *best* methodology or unassailable research."  In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999) (emphasis added), amended by 199 F.3d 158 (3d Cir. 2000), cert. denied, 530 U.S. 1225 (2000).

      Defendant's concerns with Risser's apparent failure to examine various additional evidence both within and outside the record does not warrant preclusion for lack of proper factual foundation.[2]  Risser reviewed a significant amount of documents in advance of the drafting of his Report, including Plaintiff's medical records, social security statements, tax returns, and various pleadings from this case.  (Risser Report at 3).  Risser met with Plaintiff and assessed his physical limitations.  (Id. at 1; Pl.'s Br. at 4).  Risser also reviewed Plaintiff's employment records and education.  (Risser Report at 3; Pl.'s Br. at 4).  As one District Court has concluded, "[t]his is a standardized process and is in accordance with the process established by the American Board of Vocational Experts"—of which Risser is a member.  See Oaks v. Wiley Sanders Truck Lines, Inc.,

_____

[2] In support of Defendant's position that preclusion is appropriate, Defendant cites Huey v. United Parcel Serv., Inc., 165 F.3d 1084 (7th Cir. 1999), where the Seventh Circuit affirmed the District Court's preclusion of the plaintiff's "forensic vocational expert," who was proffered to testify that the defendant employer "retaliated against [the plaintiff] for his claim of discrimination." Id. at 1086; (see Def.'s Br. at 5).  The Seventh Circuit agreed with the District Court's conclusion precluding the expert from testifying because the expert, among other things, did not (a) conduct a statistical analysis to determine whether race was an explanatory variable in the plaintiff's discharge, (b) study the defendant's personnel files, or (c) reconstruct the underlying facts. Huey, 165 F.3d at 1086.  Risser's failure to study Defendant's personnel files and reconstruct the underlying facts, however, would present a much stronger case for preclusion if, similar to Huey, Risser was being proffered to testify that Defendant terminated Plaintiff *because of his MS*.  In Huey, the expert concluded that the plaintiff "was the victim of a retaliatory discharge by [the defendant] *for racially motivated reasons* in violation of Title VII." Id. (emphasis added).  Risser, however, is not being proffered to testify on the cause of Plaintiff's termination.  Rather, Risser is being proffered to testify on future income capacity and the financial impact resulting from Plaintiff's termination—an inquiry that requires less attention to the motivations behind the employer's decision and is fundamentally different than the analysis required in Huey.  In essence, Risser is an expert who will testify as to damages, while the expert in Huey was proffered to testify as to liability.

No. 07-45, 2008 WL 4180267, at *3 (E.D. Ky. Sept. 8, 2008).  Despite Defendant's implication, vocational experts, like medical and other experts, "are not required to review every record or perform every conceivable test" in order to reach a reliable conclusion that has proper factual support.  See Johnson v. Vane Line Bunkering, Inc., No. 01-5819, 2003 WL 23162433, at *6 (E.D. Pa. Dec. 30, 2003).  To the extent that Risser's failure to examine certain documents may have led to errors or improper assumptions in his Report, the Court does not consider this a basis for the wholesale preclusion of either Risser's testimony or his Report.  As the Third Circuit has held, "[f]actual errors in a witness's testimony are not grounds for excluding the witness from testifying as an expert."  See In re Unisys Sav. Plan Litig., 173 F.3d at 166 n.11; see also In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 753-54 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995).

As to Risser's use of Plaintiff's 2003 pay rate while employed as an HVAC Technician in "Vocational Scenario #2" (even though Plaintiff was eventually transferred from this position to the Front Desk Clerk/Leasing Consultant position in February 2004), it cannot be said that there is no factual basis for using this extrapolated $17/hour pay rate.  (Risser Report at 6 ¶ 2).  Here, there is a factual basis to assume that Plaintiff would earn a rate comparable to the rate he earned as an HVAC Technician because he *actually earned this rate as an HVAC Technician*.  To this extent, Defendant takes issue not with the foundation of the $17/hour figure itself, but with the appropriateness of using it as part of Risser's calculation given Plaintiff's requested transfer from the HVAC Technician position to the Front Desk Clerk/Leasing Consultant position in February 2004.  This issue can be addressed on cross-examination.  See Deghand v. Wal-Mart Stores, Inc., 980 F. Supp. 1176, 1180-81 (D. Kan. 1997); see also TMI Litig., 193 F.3d at 665; Breidor v. Sears, Roebuck and

9

Co., 722 F.2d 1134, 1138-39 (3d Cir. 1983).[3]  Additionally, the Court will not strike Risser's Report

in its entirety based on Defendant's dispute with Risser's 29% fringe benefits figure, as this figure

comes from the Bureau of Labor Statistics and—while perhaps imperfect because it does not

consider the specific benefits given by Defendant to its employees—is not arbitrary.  (Risser Report

at 11-12; Pl.'s Supp. Br. at 4-5); see Holscher v. Olson, No. 07-3023, 2008 WL 2645484, at *7

(E.D. Wash. June 30, 2008) (holding that expert did not arbitrarily calculate a 15% lost fringe

benefits rate—even though expert did not use specific fringe benefits rate of defendant

municipality—because expert calculated this rate based on fringe benefits packages offered by

public sector employers in the Northwest United States).

**E.    Reliability of Risser's Model**

         Defendant also argues that the techniques Risser uses to derive Plaintiff's future earning

capacity are unreliable under Daubert because there is an "analytical gap" between the assumptions

that Risser relies upon and the conclusions he reaches based on these assumptions.  (Def.'s Supp.

---

[3] The instant case is distinct from Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir. 2000), where the Third Circuit
Court of Appeals held that there was no factual basis in the record for the proffered economics expert's assumptions
regarding the plaintiff's economic loss.  In Elcock, the plaintiff sued Kmart for injuries she suffered in a slip-and-fall
at a Kmart store.  Elcock, 233 F.3d at 738.  The Elcock Court held that the expert's economic damages model relied
on several empirical assumptions that were not supported by the record.  In Elcock, the plaintiff's expert made
multiple assumptions, aside from work-life expectancy, that the Court found problematic.  First, the Elcock expert
assumed that the plaintiff was 100% disabled, despite the assessment of a vocational rehabilitation specialist who
described the plaintiff as 50% to 60% or 50% to 75% disabled.  Id. at 755.  Second, the Elcock expert assumed that
the plaintiff would have made $6 an hour, working 40 hours per week, which would have led to a salary of over
$12,000 but for her 100% disability.  However, the record indicated that the plaintiff earned under $6,000 the year of
her injury.  Id. at 755-56.  Third, the Elcock expert did not discount the approximately $1,000 that the plaintiff was
still able to earn after the accident.  Id. at 755-56.  As a result, the Elcock Court held that the District Court abused
its discretion in admitting the plaintiff's expert's model as evidence because the assumptions made had no support in
the record.  Id. at 755-56; see also Benjamin v. Peter's Farm Condominium Owners Ass'n, 820 F.2d 640, 643 (3d
Cir. 1987) (holding that expert's lost future earnings testimony lacked proper factual foundation because the expert
relied solely on plaintiff's speculative assessment of plaintiff's ability to enter workforce); Gumbs v. Int'l Harvester,
Inc., 718 F.2d 88, 98 (3d Cir. 1983) (expert's lost earnings opinion was based upon erroneous assumptions about
future salary, which had no basis in the record).  Unlike Elcock where there was *no basis* for the proffered expert to
assume both that the plaintiff was 100% disabled and that the plaintiff would ever make $12,000 per year, Risser's
$17/hour figure is derived from Plaintiff's employment history.  Any foundation problems that exist in the case *sub
judice* are minor in comparison to the numerous arbitrary assumptions made by the experts in Elcock, Benjamin, and
Gumbs.

Br. at 2; Def.'s Br. at 12-15).  In particular, Defendant claims that Risser's use of statistics from the general population published in the Journal of Legal Economics to calculate Plaintiff's 24.02-year additional work-life expectancy is not a reliable model for calculating damages.  (Def.'s Br. at 12-15; see Risser Report at 8 ¶ 3).  The basis for Defendant's assertion is that these general population statistics fail to discount Plaintiff's work-life expectancy as a result of Plaintiff's MS condition. (Def.'s Br. at 12-13).  According to Defendant, had Risser taken Plaintiff's disability into consideration Plaintiff's work-life expectancy would substantially decrease, thereby limiting the front pay damages to which Plaintiff may be entitled.  Furthermore, Defendant argues that Risser's Report is internally inconsistent because it uses general population statistics in calculating work-life expectancy while also noting that "[r]esearch has shown that approximately 20% to 30% of persons with MS remain employed 5 years after the diagnosis is made."  (Risser Report at 4, ¶ 6; see Def.'s Br. at 13; Def.'s Supp. at 2-3).  Defendant also argues that Risser's work-life calculation is unreliable because it does not take into account Plaintiff's potential to experience absenteeism due to his MS.  In support of this argument, Defendant cites the fact that Plaintiff took a leave of absence from work for three months from June 23, 2003 to September 23, 2003 due to his MS symptoms.  (Def.'s Br. at 12).

In determining whether an expert's methodology is reliable, the Third Circuit requires "more than a *prima facie* showing" that the methodology is reliable, but cautions that "the evidentiary requirement of reliability is lower than the merits standard of correctness."  Pineda, 520 F.3d at 247 (internal citations and quotations omitted).  "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  The Third Circuit in Paoli explained the reliability requirement as follows:

> [A showing of reliability] does not mean that plaintiffs have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . . . <u>Daubert</u> states that a judge should find an expert opinion reliable under Rule 702 if it is based on 'good grounds,' i.e., if it is based on the methods and procedures of science.  A judge will often think that an expert has good grounds to hold the opinion that he or she does even though the judge thinks that the opinion is incorrect . . . . As we explained in <u>Paoli I</u>, "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence."
>
> <u>Paoli</u>, 35 F.3d at 744 (quoting <u>In re Paoli R.R. Yard PCB Litig. I</u>, 916 F.2d 829, 857 (3d Cir. 1990), <u>cert. denied</u>, 499 U.S. 961 (1991)).

The standard for determining reliability "is not that high," and a District Court should focus on the expert's methods and reasoning, leaving credibility decisions for after admissibility is determined. <u>See</u> <u>TMI Litig.</u>, 193 F.3d at 665.  The focus of this reliability inquiry "must be solely on principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 595.  It is worth noting that Defendant has not identified any one factor under <u>Daubert</u> that leads to a conclusion that Risser's methodology is unreliable.[4]

Any defect on the part of Risser in either (a) using general statistics rather than a more specific table that takes into account Plaintiff's MS or (b) not taking into account Plaintiff's three-month absence from his job in 2003 due to his MS condition is not fatal to Risser's Expert Report. For example, in <u>Myers-Clark v. Frahler Elec. Co.</u>, No. 05-5553, 2007 WL 189248, at *1 (W.D. Wash. Jan. 22, 2007), the Court rejected a claim that an economics expert's testimony was unreliable because the work-life expectancy calculation did not take into account the decedent's drug and smoking habits.  According to the District Court, this issue was a "fair matter[] for cross-

_____

[4] "A trial court should consider several factors in evaluating whether a particular methodology is reliable.  These factors . . . may include: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.  <u>Pineda</u>, 520 F.3d at 247-48.  These factors are neither exhaustive nor applicable in every case.  <u>Id.</u>

examination." Id.  As another District Court held, "[a]n expert's assumption that a person's work-life expectancy will be a certain length and use of that assumption in calculating that person's loss of future earnings does not make the expert's testimony inadmissible under Daubert.  Instead, the evidence is admissible and subject to vigorous cross-examination."  See Lee v. U.S. Taekwondo Union, No. 04-461, 2006 WL 5240611, at *4 (D. Haw. Jan. 26, 2006); see also Williams v. Jader Fuel Co., 944 F.2d 1388, 1406 (7th Cir. 1991), cert. denied, 504 U.S. 957 (1992); Flebotte v. Dow Jones & Co., 97-30117, 2000 WL 35538296, at *2 (D. Mass. Dec. 22, 2000).  The Court agrees with the analyses of its sister courts, especially given the Third Circuit's command that the reliability prong under Rule 702 is "is not that high" a hurdle to overcome.  See TMI Litig., 193 F.3d at 665.  After an examination of the Daubert factors and relevant case law, it is evident that the use of more general figures when assessing the work-life expectancy of an individual with a disability, rather than using more disability-specific statistics, is not the type of "junk science" that the Daubert standard intends to eliminate.  A jury could similarly vet Risser's decision to not factor in his wage loss analysis Plaintiff's three-month absence from work in 2003 due to his MS symptoms.  The new objections to Risser's Report made in Defendant's supplemental filing can also be addressed on cross-examination.

Defendant also takes issue with the fact that Risser presents a lump sum damage calculation of approximately $65,700 in "Vocational Scenario #2" without presenting a year-to-year breakdown, thereby making it difficult for the jury to "cut off damages at some identifiable point in time at which it finds that Plaintiff has been made whole."  (Def.'s Br. at 14).  Defendant has cited several cases noting that the purpose of front pay is to ensure that a person is made whole, not to guarantee an annuity to every claimant who cannot mitigate damages.  See Anastasio v. Schering Corp., 838 F.2d 701, 708 (3d Cir. 1988); Cassino v. Reichhold Chems. Inc., 817 F.2d 1338, 1347

(9th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1047 (1988).  However, these cited cases do not specifically address the reliability of an expert's utilization of a lump-sum payment method under <u>Daubert</u> and Rule 702 of the Federal Rules of Evidence, but rather reference the principle that "front pay awards, like backpay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts."  <u>See</u> <u>Cassino</u>, 817 F.2d at 1347.  In the absence of persuasive authority or a compelling argument justifying inadmissibility, the Court cannot conclude that the admission of this lump sum methodology violates Rule 702.

The Defendant in its papers has not suggested that the fundamental approach taken by Risser departs from accepted practice in the field of vocational science, but instead has merely criticized the selection of certain assumed values and Risser's reliance on certain records.  <u>See</u> <u>Ogden v. Saint Mary's Med. Ctr.</u>, 06-11721, 2007 WL 1675092, at *2 (E.D. Mich. June 11, 2007).  While Risser's Report may not be perfect, perfection is not the standard under Rule 702.  <u>See</u> <u>Paoli</u>, 35 F.3d at 744; <u>Keller v. Featserville Family Health Care Ctr.</u>, 557 F. Supp. 2d 671, 678 (E.D. Pa. 2008). Accordingly, the Court need not find that Risser's methodology has the best foundation or is correct, and instead will leave such questions to the jury.  This holding comports with the "liberal policy of admissibility" commanded by the Third Circuit.  <u>See</u> <u>Pineda</u>, 520 F.3d at 243.

An appropriate Order follows.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN L. WEIRICH, et al.,          :
                                   :
            Plaintiffs             :  CIVIL ACTION
                                   :
      vs.                          :
                                   :  NO.  07-cv-871
HORST REALTY COMPANY, LLC          :
                                   :
            Defendant              :

**ORDER**

AND NOW, this 27th day of March, 2009, upon consideration of Defendant Horst Realty Company, LLC's Motion to Preclude both the Expert Testimony of John S. Risser, MA, ABVE, CRC and the admission of his "Assessment of Employment Potential" into evidence, Plaintiff's opposition thereto, the parties' supplemental briefs, and all appended exhibits, it is hereby ORDERED that this Motion (Doc. No. 34) is GRANTED in part and DENIED in part.

Defendant's Motion is DENIED to the extent that it seeks the preclusion of John S. Risser's testimony and the admission of his "Assessment of Employment Potential" into evidence *in their entirety*.  Defendant's Motion is GRANTED in that John S. Risser, MA, ABVE, CRC shall not testify as to whether Plaintiff was "appropriately promoted" or "eminently qualified" for various positions with Defendant.  Furthermore, references as to whether Plaintiff was "appropriately promoted" or "eminently qualified" for various positions with Defendant shall be stricken from Risser's "Assessment of Employment Potential."

BY THE COURT:

*/s/ Thomas M. Golden*                           
THOMAS M. GOLDEN, J.